Yes, your honors. Good morning. John Lemon for Henry Michael Houston. I'm going to take 12 minutes total I'd like to reserve three of mine for rebuttal and so nine on opening and 3 a.m.. Rebuttal right and mr. Harris is going to Take the remainder for mr.. Bridgewater Okay, and then we just have someone else sitting there. No, that's mr.. Fleming. He's co-counsel for okay, okay? So then mr. Harris then that leaves him with eight minutes and were you saving any for a rebuttal six and two okay? Thank you Thank you your honors again. Good morning. John Lemon for Henry Michael Houston your honors each of mr. Houston's convictions must be reversed because the government introduced the most inflammatory and prejudicial false testimony Imaginable they presented a serial jailhouse informant who testified that mr. Houston told him that if they didn't give Houston the death penalty for what they did to those niggers in Lewisburg He would keep killing niggers and would continue to kill until somebody killed him the statement was undeniably false And because the government allowed it to go uncorrected We are left with any reasonable likelihood that it could have affected the judgment of the jury This court must therefore reverse and in fact in previous cases this court has stated that reversals under these circumstances are virtually Automatic well, let me ask you that the first question that I had was that I take it We're looking at this for plain error right there wasn't an objection made at the time You are actually I believe this is preserved and briefly the reason why it's preserved. Is that after? Prosecutor Martin testified in the penalty phase mr.. Fleming Specifically asked the district court to strike McConaughey's testimony because it was clearly perjured for purposes of the penalty phase the district court denied that motion And although he did state on the record that he thought that it was a very strong argument for perjury. He denied mr. Fleming's motion now as as I'm sure your honors are aware There's no obligation for defense counsel to continue to make fruitless motions once a definitive order has been given by the district court And this court reiterated that last week in the Sepulveda case Where it stated again a definitive ruling once there's been a definitive ruling the issue is preserved however But one was that the objection was made After the statement came in right well It did not become defense counsel suspected But it could not have been certain that this was perjury until after Martin testified in the penalty phase at that moment That's when mr. Fleming specifically asked for the relief that the that the Testimony of McConaughey be stricken so at that point the issue was preserved, but even if we are in plain air I mean, this is a perjury case. I mean this is this is error is plain it clearly affected Mr.. Houston substantial rights and also the integrity of the proceedings So let me just ask my question before we focus on them Is that how you know I think that's how it's pronounced the question that came to my mind was we have the government introduced the testimony of Benton Benton was one of their main witnesses, and he says I Houston was agreed to participate He he was going to kill people by himself in his unit. He came with me. We stabbed this individual together Mr.. Salam together Why doesn't any testimony by McConaughey whether perjured or not is Non-prejudicial in light of this testimony from Benton so that that puzzled me several several reasons your honor first of all the statement by itself Is the only such statement attributed to mr.. Houston? He made no statements throughout the from the date of the killings throughout the trial. He's never talked about this This is the only statement alleged to have been made by him And it is an apocalyptic statement a grisly confession Which of course the Supreme Court has observed on numerous occasions is the single worst type of evidence that can excuse me? It can be admitted against a defendant but also with respect to Benton specifically what Al Benton testified to is is not a Al Benton took credit for the killings Al Benton stepped up and said I killed Salam He was asked a leading question on direct examination It started off after you and Houston killed Salam and Benton interrupted and said I killed Salam and Benton testified That he chose a 12-inch shank with a special handle wrapped with with rope around it So that he could make sure that he killed Salam when he walked into Salam cell He stuck him through the neck with that shank at that time mr.. Houston was outside the cell, but he was being Charged with the coke and he was guilty as a co-conspirator right now on the two by car counts He was convicted as a co-conspirator and didn't Benton testify that Houston was with him and was armed with a knife and Right as participating. I mean there certainly was enough for the conspiracy well I'm very your honor what what again what Benton said is is it Benton Houston was undeniably with Benton at the time? But Benton went into the cell first Benton stabbed him Benton said I worked Salam until I knew he was dead at that point Houston had already left the cell So it's quite possible. There's no blood from Salam that was found on Houston it's quite conceivable that that Houston to the extent he participated stabbed a dead man already and at the At the end when I'm sorry when Benton was done stabbing Salam He walks out of the cell and Houston takes his knife from him disarms him and throws his knife out the window and Benton Testified that had Houston not done that he would have gone and killed more people and so Mike Houston's involvement Was really another way to look at that as getting rid of the evidence to well hey perhaps your honor But that's not the spin that Alan Benton put on him He felt that Houston disarmed him and the thing about Mike Houston is he was not a member of the Aryan Brotherhood at the time I mean he's different than a lot of the other people who you've heard Argument about today because he was not a member of the organization He was elevated after being made an offer that he couldn't refuse and those were Benton's exact words I made him an offer that he couldn't refuse and The defense argued throughout the case that Houston participated to the extent that he did participate in this killing Not in an effort to further the enterprise, but because he was under an element of coercion that he was Basically doing it to save himself as opposed to further criminal enterprise He received a battlefield promotion if you will after the killings, so that's why this certainly cannot be Harmless I mean the most argument is that the testimony of him the a co-conspirator with Benton Was was not so compelling Compared to McConaughey's Exactly because McConaughey's testimony is the only testimony that puts him squarely into conspiracy That's that that false testimony that false confession is yeah And what was the statement what did he speak about killing Salaam or what exactly was the statement? McConaughey actually and I didn't make this clear enough in the briefs McConaughey actually perjured himself in two distinct respects The first piece of the perjured first perjured statement is the grizzly confession He attributes to Houston that Houston said If they don't give me the death penalty for what we did to those niggers in Lewisburg I'm going to keep killing niggers and will keep in Continue to kill until they kill me. That's the first Completely False perjured statement the second statement is that he not only But not only was that statement made to him, but that he related it to prosecutor Martin in Lewisburg Excuse me at ADX circuit 2003. So those are the two statements of the government says well The defense has not to this date has not proven that those statements were false You raised an inference that they were but you haven't shown that they're false your honor again This is not a garden variety statement This is a ghastly confession and I think that any reasonable person could not argue that this is that there is any chance That McConaughey was telling the truth without blushing I mean this is Unlike any of the cases cited in the government's brief unlike any case that I've ever seen before this court We have a serial jailhouse informant who was thoroughly impeached by a federal prosecutor Again, mr. Martin Specifically said that had the statement been made he would most likely have remembered it He certainly would have written it down that he concluded from the interview that Houston did not confide in McConaughey that Houston did not Provide any details of the killings to McConaughey that he did not unburden himself in any way and then in August 2003 He tells mr. Wolf that Houston did not that McConaughey may have valuable information So you're saying that the inference is so strong. Yes, the inferences have to conclude There's no other way to conclude that that it was false. Is that is that your argument among other things? Yes, that he is thoroughly impeached by a federal prosecutor. We have the timeline that which I provided your honors with a Demonstrative to show the sequence of events the abrupt focus shift in the focus of McConaughey's testimony Initially, it's on John Campbell and then it shifts after John Campbell's death to Mike Houston He taught were you able to make that argument to the jury? I did not represent. Mr. Houston at the trial court I believe that some of that argument may have been made to the jury But certainly not all of it and certainly not during the guilt phase because the defense has not become aware of all the impeachment material until the end of Martin's testimony in the penalty phase This also was a closed case the jury deliberated for 29 days You've actually used your time. So I don't want you to take all of your co-counsel. Thank you Thank you Good Morning again, William Harris on behalf of Wayne Bridgewater just pick up on that last point that mr. Lemon was alluding to Why this really why this testimony really made a difference than the Carnegie testimony. It was a closed case The jury was out 29 days on this case also You have to take a look at the differential result among the three defendants one of the defendants Slocum was unique in that Slocum was not implicated by this statement by the slander and Slocum was either acquitted or Hung on all counts So I think the court water. I mean Bridgewater was That's your client, right? Yes, I represent Bridgewater. I mean he wasn't Mentioned in the Carnegie's testimony either. He was your honor That was the point. I wanted to I wanted to go back to The he is literally implicated by this because the statement was mentioned and literally implicated are two different things Okay, his name show up his name did well by inference for this reason. Let me try to answer that question the statement is That Houston supposedly said if they don't give him the death penalty for what they they plural meaning Houston Bridgewater and Benton did to those plural DC blacks Namely Salaam and joiner. Well Bridgewater was the other person we're talking about Bridgewater Houston and Benton and Plural victims Salaam and joiner, so I would submit to the court that literally Looking at the words what what they did the words they and those this statement this slander Literally implicates mr. Bridgewater Houston's lawyers is indicating that the impact the McConaghy's testimony relates at least in part to it's it's a confession so That wouldn't be the case for your client, right true the Damage the thrust of this is that mr. Bridgewater or Did this for racial reasons our whole defense at the trial was that there was this war they were ordered by? Benton to take that they had to Get involved in this thing and that there was an existing state of war with the DC blacks And these guys didn't do it for a bike car purpose not to Maintain or increase a position in a racketeering enterprise But rather to survive because these guys were coming after us and that was Benton's testimony so to say that the the problem with this slander of McConaghy is this Saying that Bridgewater by implication killed Not because he was trying to help himself, but because he wanted to get these guys that there was a racial motivation With the DC blacks, so I mean obviously In order for mr. Bridgewater to profit from this argument It has to implicate him and I would submit just literally you take a look at the words that McConaghy testified to Referring to Houston he said and this is a page 83 of the Houston excerpts He said if the government doesn't give him The death penalty for what they did to those niggers in Lewisburg Then as soon as he gets out of the control unit he will kill more niggers And he's going to continue to kill until somebody kills him that implicates mr. Bridgewater use of the plural terms they and those Right he did not get the death penalty, but it hung hung is to both in the penalty phase Just briefly I wanted to touch on some of the other issues the we made a point on count seven about the Pinkerton instruction being insufficient because it doesn't narrow down the the subject group of Conspiracies possible conspiracies to a Vicar conspiracy and the government's argument was that you have to look at all of the instructions and basically instruction number 34 Here is the problem because it's instruction number 34 Which is the basic Vicar elements talks about? doing so for the purpose of the Vicar purpose of Gaining entrance Well you seem to be asking for this is I'm going to take another direction briefly that you seem to be asking for instructions on duress second-degree murder and along those lines and That what what the struggle that I'm having with this from the standpoint that it you know sometimes There are crimes that they either are or they aren't and that in in these situations The way that you know all of the allegations are that you seem to be asking for self-defense second-degree murder duress With the concept that because these are prison crimes because of the stress that people are under that we need to somehow Extend the law to what would be I would term to be the preemptive strike I've got to kill them before they're going to kill me What legal authority do you have for that? Well, we're not arguing self-defense judge. We asked for self-defense instruction and judge Judge Carter denied it, but to answer your question there was legal authority that we Either first degree you're either guilty or you're not guilty you're guilty of first-degree murder. You're not guilty here. I don't see what facts here Under the existing law Would make it any you know Obviously in their minds I I can't I can't argue with the fact that if you if you're if someone's going to get you get them first before they Get the jump on you, but there's nothing in our law that allows us to give instructions like that for the preemptive strike well, I Agree to some extent the law is not developed and then what I argued in the trial court was we cited cases from International law where it works for country. So I mean would you concede if we were to Accept your argument. We would be extending existing law. I Did not find any Law when I was briefing this before judge Carter allowing this Preemptive strike and the answer to your question would be yes. All right, unless judge Kuda has questions I'm gonna get the remaining for your rebuttal. Thank you I Talk about just the facts for a minute just because we're on a different case. Why don't you state your name again? Stephen wolf for the government your honor Both defendants assert that this is a close case and that's a laughable proposition the As to mr. Bridgewater taken in the reverse order. Mr. Bridgewater stabbed Frank Joyner three dozen times in front of Byron Ball a black man in his late 60s Who weighed 140 pounds dripping wet and was playing? Monopoly with Frank Joyner when Bridgewater came in and killed him Mr. Ball has died since in a prison in Ohio But he was an eyewitness in the case against Bridgewater as a result and all sort of catch a glancing He was stabbed by stabbed there By Jason Schweinhardt, well, he had an attempted murder charge in one of the other cases that we did previously I think wasn't that one of the predicate offenses in one of the cases we've done previously today Yes, your honor. It was charged in the same case, but Schweinhardt wasn't against Byron the attempted murder of Byron Ball, there's an assertion here that it wasn't an attempted murder because Jason Schweinhardt wasn't shown to have the attempt intent that there was insufficient evidence because the blow Wasn't to the heart or something The evidence is overwhelming as to Houston for reasons that Mr. Houston really pretends aren't facts in the record he was the corrections officers responded to this very quickly and The first one on the scene saw Mr. Houston Leaving the scene of the crime and coming back from the range where he and Benton had killed Salam to the range where he hit Out so he was seen walking from the scene of the crime Mr. That was by Corrections Officer Coom Mr. Bunch then saw both Al Benton and Henry Houston Henry Houston who didn't reside in that unit locked in Benton's cell He said they both had blood on their hands and both had blood on their clothing Daniel Lockoff then came by and saw that Houston and bridge Houston and Benton both had blood on their clothes and were both washing themselves at Benton's sink finally Matthew Edinger Testified about the videotape that showed this is the hole in the duress claims Houston had to Distract the guards in order to get from B block where he resided to a block where the murders were to take place He was plainly away from Al Benton and couldn't have been under duress when that happened and heading her Showed exhibit 72 the videotape that showed Houston sneaking into a block Eddinger also said that he went around and looked at the defendants after the fact Mr. Lemon Carelessly said that there was no blood from Salam found on Houston But Eddinger found blood spatters on Houston's face and took a photograph of them the exhibit is 94 the testimony is on April 2nd the first volume page 49 the evidence is overwhelming That is what at the end of the day determines that McConaughey's testimony Whatever it was Wasn't prejudicial because it really had little to do with The guilt the plain guilt in the penalty phase perhaps. That's why defendant Houston chose not to call a USA Martin in the penalty phase Because the evidence of guilt was overwhelming and the interest of mr. Houston his and his attorneys in the capital case was to spare mr. Houston The death penalty so that they chose to bring their Impeachment for McConaughey in what standard do we review the Brady and Mooney? No, is that who he claims your honor? As to the Mooney-Napooi, it's whether it's prejudicial and it's not Pardon me is it to Novo Darrell do we get to Novo? And it's a plain error or not Well, it's plain error here because the preservation that defense counsel speaks of took place on August 8th 2007 at the end of the penalty phase it was not preserved Before it was never made the subject of a motion The judge was never offered an opportunity to correct it prior to the penalty fate or the guilt phase jury, the point of Preserving error is not an intellectual exercise It's to make the objection and allow the trial court to do something about it And there was never an assertion to the trial in the guilt phase that The testimony was perjurious indeed, I think the only inference you can make is that defendant Houston said Thank goodness For this Witness, I'll impeach the daylights out of him and they did and I'll argue the daylights out of His impeachment and they did and then when they lost in the guilt phase, they said I I got to do something more Now let's call the AUSA and see what we get come up with the most striking thing about Whether this evidence is perjurious is the inference that your honor points out They have to make the in the argument is the inference that it's false is so strong It has to be perjury. Isn't the inference pretty strong? I mean maybe AUSA says well, yes, I would have remembered if he had said it but I don't recall if he said it or not the If your honor give me a moment to explain this This is so lovely That is what the AUSA said and the argument on behalf of defendant Houston is that if if it's so clear that you would remember Then It must be that it didn't happen But there's an instance in this case given by defense counsel that shows that that's not true Defendants defendant Houston only claimed in his opening brief that there was never any discovery about McConaughey's statement but in fact it was Reports were given in January or early February of 2007 and on April 13th Four days before he testified an email was sent out correcting or amplifying the prior Agents report saying you know where the report says the reference was to DC blacks in fact I want to let you know he's coming up in four days the real word. He used was niggers it went to all defense counsel and Defendant Houston asserts in his opening brief that they received no discovery. They were asserted that twice The government showed in its answering brief that discovery was made in January the email was sent on April 13th And what do defense counsel say in the reply brief about why they? Represented falsely to your honors that there was no discovery they say The false statement was quote Based on the collective memories of trial counsel for the appellants Meaning trial counsel for the appellants in the plural for lawyers Collectively did not remember that they received discovery in January that they received an Email on April 13th, and you should excuse us because we forgot So you're saying, but they're saying here if Fred Martin doesn't remember it has to be perjury And so you're saying a strong inference is not enough to establish Absolutely perjury, so we don't get into the Napooi area Can I turn your in this? You have any other questions on this I wanted to turn to the jury instructions issue Can you help me with these jury instructions because as I look at them? I'm having trouble seeing why there isn't an inconsistency between 34 and 36 where 34 says that in order to prove this these vicar counts There's a requirement for the jury to find that the defendant did so for the purpose of Enhancing their position in the enterprise where jury instruction 36 says as to co-conspirator liability Let me explain that it's not necessary for the jury to find That the defendant personally acted so help just walk me through it and help me understand. Why that is an inconsistency Well Your honor I submit it's not an inconsistency because the instructions have to be taken as a whole and As a whole right if you have if one instruction says X and the other one says not X so that we have a contradiction We assume that the jury could have followed the erroneous instruction Your honor I think it's because the instruction 34 if I have the number right the element instruction Explains that The while the defendant well Maybe I should do it in reverse order the instruction about co-conspirator liability says that the defendant doesn't have to Carry out the act himself for that purpose and so it says that there has to be somebody has to have done it for the purpose But the defendant doesn't have to do it for the purpose which seems to me an erroneous expression of what the vicar statute Says your honor in the elements instruction. It says that Paragraph seven and eight say that the defendant can't has to do one of several things He has to commit the murder aid in a bet the commurder have co-conspirator liability and then that the defendant Did so for the purpose of gaining entrance to so that so that's correct, but what about 36 then? So so 34 seems to be a correct Expression of the vicar that seems to be a correct expression of the law, but then help me understand why 36 is correct I'm not sure that 36 standing by itself is correct the it doesn't address the question It starts by saying the defendant also may be found guilty of the vicar offense Alleged in count six and seven based on the law of co-conspirator liability And then it goes through that and then it ends by saying and it's not necessary to find the defendant did so for this purpose But it's necessary to find that he did it for this for Purpose it's necessary to find that he did it for the purpose recited in the co-conspirator liability elements Which I'm sorry. I didn't understand that It seems to me that the more detailed instruction is Not contradictory. It's just silent on a question and The silence I submit is not contradictory of the positive assertion in 34 So, how do I understand this language? Let me explain co-conspirator liability further to find the defendant guilty based on co-conspirator liability It is not necessary that the defendant personally act for the purpose of gaining entrance to maintaining or increasing his position in the enterprise The Honor The point of that is that the defendant for co-conspirator liability The particular defendant may not have acted at all That is the defendant has to have joined The enterprise and have agreed that Murders would take place for instance In Furtherance of the enterprise's Purposes but the defendant doesn't have to have acted at all the Pinkerton defendant, right? It's a defendant must have done so 36 says that for co-conspirator liability The defendant need not commit any overt act for the purpose of gaining entrance to or increasing status in a be however The jury would still have to find that the defendant conspired to murder for the purpose of gaining entrance Increasing status pursuant to the jury instruction 34. Is that right? Yes, Your Honor although The defendant has to have agreed or conspired When he joined the enterprise That one of the purposes of the enterprise was in this case The only purposes charged were a narcotics distribution and crimes involving murder So the defendant had to agree that he was joining an enterprise that would kill when necessary and distribute narcotics For these vicar offenses. The only thing that's being charged is either Aiding and abetting the the specific murders of Joyner and Salaam or have co-conspirator liability for the murders of Joyner and Salaam and then correctly goes on to say and You have to show that you did that you joint you conspired if that's what they found or you aided and abetted for this particular purpose That's what 34 says, right? Yes, sir the the conspiracies There's No evidence at all That there were any murder conspiracies or indeed any conspiracies involving these defendants that weren't Aryan Brotherhood conspiracies so that the murder conspiracy is a conspiracy necessarily by the enterprise this the instructions would strike me as of more moment if There was an assertion as your honors alluded to with Steve Scott In the earlier argument that he might have attacked Irvin bond for some other purpose, but there's no assertion of that at all the only conspiracies that exist In the facts or that are alluded to a trial at all are the Aryan Brotherhood Conspiracies to kill those who are threats to the organization So you're saying if there's an error in these instructions, it would be harmless Is that what you're telling me that potentially this is a inconsistent instructions but any error is harmless because all the evidence showed that the murders were related to Yes, your honor, I guess I Guess that makes more sense You're not I'm getting the impression that you're a little bit confused because you're not it. You're not articulating it this that clearly well So there's nothing wrong with 34 There's a is that yes, there's nothing wrong with 34. So is there anything wrong with 36? Your honor that's where my confusion comes from. I think I did not see Anything wrong with 36. I didn't think it seemed to me that 36 addresses different questions and it's just silent on this particular question I don't find what particular question the question of whether the defendant has to act with in furtherance of the enterprise when he Does whatever he does that renders him liable as a co-conspirator? It specifically says it's not necessary. I Mean, how do I understand that language to say that it doesn't address that point? That's what I'm struggling with as I said your honor I plainly and not When I read these things, I didn't hesitate it over at all So that I am plainly confused and I may be Therefore not addressing your honors assertion. So if you're confused, how wasn't the jury confused because The jury hears that The defendants on trial here can be guilty because they're directly liable or they have aiding and abetting Liability or co-conspirator liability and either way they have to do whatever they do For the purpose of gaining entrance to increasing or maintaining their position in the enterprise. And that's instruction 34 That's exactly the 34 says except it doesn't say directly Liable, it's only for aiding and abetting and conspiracy Well, yeah, it seems to me that does say they could either have directly committed or aided No, but it 36 says they don't have to commit an overt act that and that's because That's addressing the point that the co-conspirator doesn't have to have done anything in particular The co-conspirator can be a member of the conspiracy in furtherance of its Purposes when a different defendant That's why I think the instruction says the defendant doesn't have to it's not saying he doesn't have to do it with a particular Purpose what I think his honor is getting at and the way I think that the two make sense together Is that one instruction says essentially the defendant doesn't have to do anything He doesn't have to commit. Okay The co-conspirator and Bridgewater on Seven was found guilty of the co-conspirator. I guess Bridgewater and six was direct participant and a co-conspirator. Yes, and so under jury instruction 36 It says you can find him guilty based on co-conspirator liability for this vicar offense And it's not necessary that the defendant personally act for the purpose of gaining entrance to etc So why isn't that just incorrect? And maybe I'm just repeating myself at this moment, so And I'm afraid I'm obliged to repeat myself again I think that the point of 36 was the point that the defendant need not For co-conspirator liability have committed an overt act at all. I think it's not he need not have Committed his act for the purpose. The real instruction is he need not have committed the act That's the point and it's shown by Bridgewater went into Joyner's cell and stabbed him three dozen times He didn't go into Salaam's cell at all because after Benton recruited the co-defendants who were going to do the murders with him They split up He and Houston went and killed Salaam. Joyner went on his own Bridgewater went on his own and killed Joyner. Schweihart and Campbell went down and attacked Roberts and Webster Okay, thank you for your argument Mr. Lemon you have three minutes Thank you. Mr. Harris. I said I would give you two your honor First of all with respect to the weight of the evidence setting aside McConaughey The weight of the evidence against mr With respect to the killing of Salaam and Benton's testimony the the salient point here is there was no blood found on mr Houston's clothes or on his knife and the blood on mr Houston's face could have been Al Benton's Benton testified at ER 112 that he does not recall specific blows being made by mr Houston and he may have cut his own hand while he was stabbing Salaam Does that really matter if he's there so shoulder-to-shoulder about their murdering? If you're doing someone excuse me I think if your honors are entertaining some sort of harmless in their error analysis for this Napuli claim It's important to show that mr. Houston was not as involved The second point I wanted to turn that's a little bit like you can't have a drive-by without a driver Well, you know Drive-by shooting without a driver and the driver didn't shoot the person but you still can't have a drive-by without the driver Your honor the jury acquitted mr. Houston of many of these counts what I'm what I'm saying is that this was a closer case than the government would have you believe Okay with respect to the the indicia of falsity for the statement itself. There were two other things. I would like to point out With respect to McConaughey's alleged confession of mr. Houston first is the abrupt shift in the focus of his testimony after John Campbell's death to mr Houston again when McConaughey talks to Prosecutor Martin and at the ADX in 2003 he attributes statements to John Campbell in 2004 He testifies in Pennsylvania in a separate case. He's asked about cooperating in this case He's asked why what he's cooperating about he says statements made to me by John Campbell in 2005 he testifies to the strength of the inference. Yes Right, and I just want to I just wanted to add that in 2005 again He testifies in this grand jury and talks about John Campbell doesn't mention. Mr Houston then the next point is we're talking about a serial Informant with an admitted mo who requested 302s He requested grand jury transcripts so that he could prepare his testimony. He testified against his crime in South Carolina He testified he's working off 100 years 107 years of exposure Excuse me a little fast, but I want to run out of time. He's working off 107 years of exposure. He testifies in Pennsylvania He testifies in, Illinois He testifies against his own prison guard lover when he's caught having an illicit affair with her just so he doesn't get kicked out of WITSEC and in just recently in the Maxwell case This court observed that these types of witnesses sometimes tell the truth But more often than not invent testimony and stray details out of the air and that's quoting judge Trott a law review article that he wrote that was that was quoted in the Maxwell opinion 13 seconds. Oh, I'm sorry. I've seen a minute 12 here. So no, I don't have a luxury started at 4 Okay, your time is almost up. All right, your honor Hey, the government says the Defense Council did not pursue a timely objection here But I would just remind your honors that the government has an affirmative Obligation to investigate perjury when they suspect it at the time that that prosecutor Flynn Redirected McConaughey. She knew that prosecutor Martin had no recollection of the statement being made She knew it wasn't in his notes. And instead she says to McConaughey and redirect. Is there any doubt in your mind? Mr Houston made these statements and then she rehabilitates him with with prior statements that were made after the motive to fabricate in Improper prior consistent statements. Okay, your time is up. Thank you Mr. Hairshift two minutes. Thank you. Just a brief point on the Standard for this court on a Mooney Napoli claim seems to me that it's a it's a due process argument And so the standard would be Chapman versus, California Harmless beyond a reasonable doubt now in this case Mr. Wolfe said that it was as to mr.  Well If the jury if it was an overwhelming case a jury wouldn't be out 29 days This was a close case and there's no there's no it's undisputed. They were out 29 days There's no way to explain there at 29 days for the guilt phase guilt phase. Yeah, how long was the trial trial was? about Six weeks eight weeks. Let's see. We started in started picking a jury in February and opening statements were March and the March 14 as I recall and the Case was argued to the jury me like early May May 2nd So I don't know six weeks. So that says something about whether or not Harmless beyond a reasonable doubt when the jury is out 29 days I think that this kind of bombshell testimony could have made a difference and you can't say that it was harmless beyond a reason Thank you. Thank you for your argument. This matter will stand submitted Last case on calendar today, United States of America versus David Michaels Sahakian case number zero nine five zero two two six
judges: Rymer, Callahan, Ikuta